United States District Court
Western District of Wisconsin

Curtis W. Johnson,
Plaintiff

Jury Trial Requested

v.

Kevin A. Carr, Cathy A. Jess, Scott M. Eckstein, Dr. Lori Adams, Cpt. Jay VanLanen, Dr. Todd L. Hamilton, Cpt. James Elsinger, Cpt. Rebecca Lenz, Sgt. ____ Cook, C.O. Joshua J. Chevy, C.O. Colin Fruehbrodt, C.O. Jaime Adkins, C.O. Zachary Korpita, ______, R.N. Jane Doe #1,

Defendants

Case No. 19-cv-692

Prisoner's Civil Complaint Under 42 U.S.C §1983

## Nature of This Case

This is a civil rights action brought, pro se (with the assistance of a prison litigator, who wrote this document), by a prisoner, charging violations of his Eighth and Fourteenth Amendment rights to be free from Cruel & Unusual Punishment and Equal Protection.

## Jurisdiction

1. 28 U.S.C §1331 & §1343 give this court jurisdiction over this case, as it seeks redress for the denial of federal rights under color of state law.

2. 28 U.S.C §2201 & §2202, along with Fed.R.Civ.P. 57 give this court jurisdiction to grant the declaratory relief

3. Fed.R.Civ.P. 65 gives this court jurisdiction to grant the injuntion sought.

Parties.

4. Plaintiff, Curtis W. Johnson ("Johnson"), is a naturally born citizen of the U.S. of A., currently being held in the Green Bay Correctional Institution ("G.B.C.I."), 2833 Riverside Dr., P.O. Box 19033, Green Bay, WI 54307.

5. Defendants are: Kevin A. Carr ("Carr"), who is the current secretary for WI's Dep't of Corrections ("W.D.O.C."), employed at 3099 E. Washington Ave., Madison, WI 53703. Cathy A. Jess ("Jess") is the prior W.D.O.C. secretary and can be located through Carr. Scott M. Eckstein ("Eckstein") was the warden at G.B.C.I. until around Dec. of 2018 and may be located through Carr. Dr. Lori Adams ("Dr. Adams") was the former supervisor for G.B.C.I.'s Psychological Services Unit ("P.S.U.") until around February of 2019 and may be located through Carr. Cpt. Jay VanLanen ("Cpt. VanLanen") is the supervisor of G.B.C.I.'s Restrictive Housing Unit ("R.H.U."). Dr. Todd L. Hamilton ("Dr. Hamilton") is the main psychologist who works with prisoners in G.B.C.I.'s R.H.U. Cpt. James Ellsinger ("Cpt. Ellsinger") and Cpt. Rebecca Lenz ("Cpt. Lenz") are security supervisors at G.B.C.I. Sgt. [illegible] Cook ("Sgt. Cook") is a Sgt at G.B.C.I. C.O.s Joshua J. Gomm, Colin Fruehbrodt, Jaime Adkins, Zachary Korpita are guards at G.B.C.I. R.N. Jane Doe #1 is the nurse at G.B.C.I. who is described in ¶28, below.

6. While Carr is only sued in his official capacity, the

rest of the defendants are sued in their individual and official capacities and, at all relevant times, acted under color of Wisconsin law.

Facts Supporting Claims

7. As well articulated in the civil complaint filed in this court for Upthegrove v. Jess, Case No. 18-CV-847-JDP, which Johnson incorporates by reference as though fully stated herein, the administration at G.B.C.I. (this includes Cpt. VanLanen, Dr. Adams, Dr. Hamilton) callously disregards the psychological needs of prisoners in general and the psychological needs of those with serious mental illnesses (s.m.i.s).

8. Jess is well-aware of the psychologically toxic effects of conditions in R.H.U.s and has done press conferences where she misrepresented to the public that the W.D.O.C. was aggressively refraining from housing prisoners with s.m.i.s in R.H.U.s This is based on Johnson's information and belief (i.a.b.). Conditions are and were so notoriously inhumane in G.B.C.I.'s R.H.U. (e.g. the state legislature funded the use of body cams to monitor guards' actions due to voluminous reports of abuse, multiple suicides and hundreds of acts of self-mutilation — over 900 lawsuits have been filed about conditions in G.B.C.I. since 2017, based on Johnson's i.a.b.) that Jess was almost certainly aware that those conditions posed an imminent danger to the physical and mental health of someone with s.m.i.

9. Eckstein, as the former warden of G.B.C.I., based

on Johnson's i.a.b., received dozens of reports of severe abuse and brutal mismanagement of prisoners in R.H.U., which alerted Eckstein that R.H.U. posed an imminent danger to prisoners in general and more so for prisoners with s.m.i.

10. Dr. Adams, as she stated in writing to prisoner Nate A. Lindell, when she was supervisor of G.B.C.I.'s P.S.U., was well aware of the research concerning the psychologically toxic effects of conditions such as those in G.B.C.I.'s R.H.U. That research nearly entirely shows that conditions such as those in G.B.C.I.'s R.H.U. (see ¶15, below) destroy psychological health — see, e.g., www.bbc.com/future/story/20140514-how-extreme-isolation-warps-minds & http://www.solitaryconfinement.org/uploads/BibliographyResearchOnIsolatedAnimals.pdf

11. Dr. Hamilton, upon Johnson's i.a.b., possessed the same forenoted knowledge as did Dr. Adams, at all relevant times, and, additionally, Dr. Hamilton observed firsthand at least hundreds of incidents of prisoners acting in senselessly self-destructive manners (e.g. cutting themselves, overdosing, smearing feces, lashing out at staff), just as researchers on the effects of R.H.U. conditions report is common, as Court Justices have noted; see Glossip v. Gross, 192 L.Ed.2d 761, 804-05 (2015) (Breyer, J., dissenting); Davis v. Ayala, 192 L.Ed.2d 323, 345-46 (2015) (Kennedy, J., concurring)

12. Cpt. VanLanen, while no psychology expert, has/had the same firsthand knowledge as Dr. Hamilton had/has about the psychologically toxic effects of B.H.U. conditions. Upon information and belief (u.i.a.b.), Cpt. Van Lanen is well aware that B.H.U. conditions overwhelm many prisoners' ability to cope, which is why Cpt. VanLanen instituted a ban on pens in B.H.U. to prevent prisoners from sharpening the tips and cutting themselves with pens.

13. Defendants Jess, Dr. Adams, Dr. Hamilton, Eckstein and Cpt. VanLanen were, u.i.a.b., at all relevant times, aware of the two suicides that happened in B.H.U. in October of 2018, yet took no action to relieve the oppressiveness of these conditions (see ¶15, below) to minimize the risk of psychological breakdowns.

14. Despite defendants Jess, Dr. Adams, Dr. Hamilton, Eckstein and Cpt. VanLanen's forenoted knowledge, none of them took reasonable measures to protect prisoners with s.m.i.'s from the psychologically toxic effects of GBCI's B.H.U.

15. The conditions in G.B.C.I.'s B.H.U. that induce stress and cause prisoners' ability to cope to be overwhelmed include but are not limited to:

a) visitors must schedule visits at least two days in advance, which reduces the amount of visits prisoners receive;

b) visits with family, friends or religious counsellors are only allowed over T.V. screens, not face-to-face;

c) the only paperwork that prisoners can have in their cells is legal papers — no educational, literary, artistic nor other papers are allowed.

d) Cpt. Van Lanen arbitrarily decides when prisoners are advanced to step 3 and when prisoners are moved to 500 wing or the treatment center, and only then can prisoners in B.H.U. watch their TVs or listen to their radios;

e) C.O.s are not trained nor disciplined so as to deter them from antagonizing prisoners; thus C.O.s frequently engage in harassing conduct, such as C.O. Gamm spraying toothpaste on prisoner Michael Scott, C.O. Frueh-brodt making prisoner Devin Ballins suck on his cell's shower nozzle to be given his meals, C.O. Korpita frequently making sarcastic comments in a squeaky voice to prisoners, etc.;

f) due to a concrete wall that splits all hallways, prisoners looking out of their cells can only see a wall and not other prisoners' cell doors.

g) as the kennel walls are made of concrete blocks, prisoners in rec. kennels can't see each other nor can sunlight touch them

h) only outdoor rec. is offered and only twice a week for an hour each period — and rec is denied when the weather is deemed bad (there's no indoor rec.);

i) there's no exercise equipment in rec. kennels;

j) it's rare for P.S.U. staff to examine or treat prisoners — sometimes P.S.U. staff walk down halls and try to publicly ~~discuss with~~ prisoners their

psychological problems, which prisoners are reluctant to discuss in such public manners;

k) prisoners returning from rec. are strip searched, and strips are done for such petty reasons as to confirm that a prisoner is telling the truth about food being missing from his tray;

l) prisoners are put on "Control Status" — denied clothing and all property — for such petty things as yelling at or arguing with C.O.s;

m) prisoners are put in feces-contaminated cells or in cells with non-working toilets to harass them (e.g. see civil complaint for E.D. Wis. Case #19-CV-255, Lindell v. Pollard, et alia);

n) prisoners are regularly framed for misuse of medication, then denied psych. meds (e.g. C.O. Ault just wrote Johnson up for having a 75 mg. Prolixin pill in his cell — but Johnson didn't reside in that cell, nor did he get 75 mg. pills);

o) no group religious or other activities are allowed, despite there being a room that was constructed to securely hold six prisoners for group activities;

p) even prisoners in RHU for non-violent misconduct are handcuffed and shackled when brought out of their cells to see medical staff, use the law library, review files or attend hearings, etc.;

q) oftentimes weeks pass without staff providing prisoners clean clothing and/or bedding, nailclippers, soap, pencils, etc.;

r) showers are 5 minutes, twice a week;

s) in the summer, cells are extremely hot and humid, while in winter cells are so cold that water freezes on window sills inside the cells;

t) portion sizes for meals provided to prisoners in R.H.U. are intentionally smaller and watered down, unlike trays for prisoners in g.p., and commissary orders for food for RHU prisoners are constantly intentionally and wrongly denied, keeping prisoners semi-starved.

16. Johnson has a long history of s.m.i. Between the ages of 8 and 18 he was in psychiatric hospital, diagnosed, as best as Johnson can recall, with PTSD Schizophrenia, Depression, Borderline Personality

17. Johnson is now diagnosed with the same forenoted s.m.i.s. Paige Stibyer (last name may be misspelled) was an attorney in Milwaukee who represented Johnson - she possesses a C.D. that contains Johnson's extensive history of pre-prison psych. hospitalizations and enlisted him in a program for people with s.m.i.s who have criminal law problems.

18. Since Johnson's May 2017 arrival at G.B.C.I., he has been in suicide watch ("obs" status) over 10 times and has harmed/tried to kill himself by hanging, cutting, swallowing sharp objects, banging his head on walls and steel doors, behavior that is "normal" for those with Borderline P.D., u.i.a.h.

19. Punitive/aggressive treatment and bullying of

of Johnson is a counterproductive means of controlling his behavior, particularly due to profoundly cruel abuse that Johnson experienced from the foster care system as a child (this abuse is documented in the C.D. possessed by attorney Paige - see ¶17, above), including him being molested, locked in a closet for over a month and denied food, beat with a steel bar, tied up and whipped with electrical cords, etc. However, Eckstein, Cpt. VanLanen, Dr. Adams and Dr. Hamilton have/do promote, utilize and effectively encourage C.O.s and other staff to deal with Johnson and others with s.m.i. in a punitive/aggressive and bullying manner, which frequently results in escalating whatever problem staff are having with Johnson, often leading to Johnson harming himself.

20. U.i.a.b., defendants Dr. Adams, Dr. Hamilton, Cpt. VanLanen, Cpt. Ellsinger and Cpt. Lenz had at least a basic knowledge of Johnson's forenoted s.m.i.s and history of abuse — they and all defendants, u.i.a.b., knew from their extensive experiences that punitive/aggressive or bullying of Johnson was very likely to result in Johnson's behavior worsening (e.g. him harming himself). Much of the self-harm behavior that occurs in G.B.C.I.'s R.H.U. (e.g. Martel Cason's 13 Oct. 2018 suicide, Marquis Greer's 13 Nov. 2018 biting of this arm, Sam Upthegrove's 13 Nov. 2018 nearly fatal self-exsanguination) has been due to staff's insulting, threatening, bullying or dehumanizing words or treatment.

21. The defendants have effectively perfected their ability to push prisoners who are psychologically vulnerable over the edge, so prisoners hurt or kill themselves; then this behavior is relied on by defendants to hurt prisoners more (e.g. write Conduct Reports, deny clothing and property). Cpt. VanLanen boasted about this on 13 Nov. 2018, when he supervised the removal of Sam Uptegrove from cell 306, while Sam was barely conscious and profusely bleeding — this was recorded by Cpt. VanLanen's and multiple C.O.'s' body cameras.

22. All of the forenoted circumstances culminated in, on or about 27 May 2018, C.O. Gomm told another prisoner that he (Gomm) was going to deny Johnson food. This wasn't an idle threat, as from the end of April through early May of 2018 (as best as Johnson can recall*) Gomm and Fruehbrodt denied Johnson food because, due to aggravation of his s.m.i., Johnson smeared feces in his cell.

23. C.O. Gomm's forenoted threat to deny Johnson his food, when Johnson was helpless to do anything about it (see *, below, and ¶ 32, below), caused Johnson to panic and psychologically decompensate. C.O. Gomm's threat was made around 9:30 PM and not long there-

* Johnson has a 6.9 grade reading level, has been in special ed. classes his whole life and is often psychotic.

thereafter, in front of Sgt. Cook, Johnson shoved a piece of metal into his arm. (See ¶21, above)

24. It was approximately 11:30 PM when Johnson stabbed himself in front of Sgt. Cook (¶23). Rather than promptly arranging for medical care and preventing Johnson from harming himself further, as W.D.O.C. and G.B.C.I. policies (u.i.a.b.) required, Sgt. Cook merely returned to Johnson's cell and observed the extent of Johnson's further self harm (i.e. slashing himself with sharpened metal). It wasn't until approximately 2:30 AM, when Johnson was preparing to hang himself, that Sgt. Cook ensured that Cpt. Lenz came and addressed the matter.

25. Despite Johnson informing both Sgt. Cook and Cpt. Lenz that it was C.O. Gomm's forenoted threats that caused him to break down and hurt himself, u.i.a.b., no disciplinary or corrective action was taken concerning C.O. Gomm

26. In response to Johnson's forenoted self-harm, Cpt. Lenz put Johnson in Obs. status; but Cpt. Lenz did not arrange for medical care for the piece of metal (approx. 4" long) that Johnson showed/explained to her was deeply embedded in his left arm, which he told her was causing shooting, stinging pain.

27. The next day, on or about 28 May 2018, on first shift, Johnson informed Cpt. Ellsinger about the sharp piece of metal inserted deep into his left arm. But Cpt.

Ellsinger, rather than promptly arranging for medical care, Cpt. Ellsinger allowed 5 or 6 hours to pass before Johnson was seen by R.N. Doe #1.

28. On or about 28 May 2018, R.N. Doe #1 saw Johnson, examined the area where a piece of metal was inserted deep in Johnson's arm — rather than ensuring that prompt medical care was provided, Doe #1 merely put Johnson on a waiting list for an Advanced Care Provider ("A.C.P.") to address the matter. Thus it wasn't until three or four more days that the sharpened piece of unsanity metal was removed.

29. Dr. Hamilton saw Johnson on 28 May 2018, knew that Johnson had a sharpened piece of metal in his left arm, was told by Johnson about C.O. Gomm's threats, and Dr. Hamilton directed that Johnson be kept in Obs. status until the metal was removed.

30. U.i.a.b., W.D.O.C. and G.B.C.I. policies and procedures prohibit allowing Johnson to have sharpened metal objects while he's in Obs. status.

31. Since having the forenoted metal object in his arm, Johnson continues to experience shooting pain in his forearm, wrist and hand. The object stabbed at Johnson's tissues while it was inside him for 4-5 days.

32. While C.O.s Gomm and Fruehbrodt were denying

Johnson food from the end of April and into early May of 2018, C.O.s Adkins, Korpita and [redacted] played along with this, refusing Johnson's requests for them to get him something to eat. Johnson also informed Cpt. Ellsinger of Gomm and Fruehbrodt's food denial, which other prisoners (e.g. William Jones) witnessed, but Cpt. Ellsinger too ignored Johnson's plight (one of the documented abuses Johnson experienced as a child was being locked in a closet and starved – see ¶19, above).

33. C.O.s Gomm and Fruehbrodt did not begin to give Johnson food again until, as they directed Johnson, he scraped the feces off the surfaces in his cell with his bare hands – they told Johnson to do so, or he wouldn't be given food.

34. C.O. Gomm and Fruehbrodt have long acted as a tight couple of sadists, denying prisoners food (amongst other degrading/abusive acts – e.g. beating prisoners, spraying toothpaste on them while they sleep). E.g., before staff were required to wear body cams, C.O.s Gomm and Fruehbrodt made an inmate named Devin Bollins suck on his shower head, do naked handstands etc. in order to be given his meals. Ulrab, Eckstein, Cpt. VanLanen, Jess, and Cpt. Ellsinger, prior to April of 2018, had been made aware of C.O.s Gomm and Fruehbrodt's psychopathic/abusive tendencies, based on numerous prisoners' complaints of abuse, but these defendants turned a blind eye to the abuse so that it could continue.

## General Allegations

35. Defendants acted with malice and callous disregard for Johnson's rights, apparently targetting him for abuse due to his status as someone with s.m.i.

36. If not enjoined the defendants will persist in their inhumane, cruel treatment of Johnson and others. As they have transferred prisoners for suing them, the injunction must lie against Carr to ensure that Johnson isn't merely sent to another prison where he's similarly mistreated by different staff.)

## Causes of Actions

37. By defendants Gomm, Fruehbrodt, Adkins, Korpita, Wells, Cpt. Ellsinger not ensuring that Johnson was given meals from the end of April through early May of 2018, and by Cpt. VanLanen, Eckstein, Jess and Cpt. Ellsinger knowing of yet ignoring abuses like this, thus authorizing the other defendants to deny Johnson food, defendants violated Johnson's Eight Amendment rights. Freeman v. Berge, 7th Cir. (denial of food due to s.m.i. violates 8th Amend)

38. By defendant Gomm, with threats of denying food, causing Johnson to psychologically break down, cut and stab himself and shove a piece of metal in his arm, and by defendants Eckstein, Dr. Adams, Dr. Hamilton, Cpt. VanLanen and Jess knowing that such abuse of s.m.i. prisoners is common and that Gomm

in particular engages in such abuse, defendants violated Johnson's Eighth Amendment rights. E.g., see Calhoun v. DeTella, 319 F.3d 936, 939 (7th Cir. 2003); Jones-El v. Berge, 164 F.Supp.2d 1096, (W.D. Wis. 2001)

39. By defendant Sgt. Cook waiting hours to stop Johnson from harming himself, and by defendants Jess, Eckstein, Cpt. VanLanen knowing that security staff engage in such callous disregard yet not taking any measures to end such behavior, these defendants violated Johnson's Eighth Amendment rights. E.g., Sanville v. McCaughtry, 266 F.3d 724, 736-38 (7th Cir. 2001)

40. By defendants R.N. Doe #1, Cpt. Ellsinger, and Cpt. Lenz not ensuring that Johnson received prompt and proper medical care for a steel rod stuck inside his left arm, and by Jess, Eckstein and Cpt. VanLanen knowing that such abuse of s.m.i. prisoners occurs, yet not taking any measures to end it, these defendants violated Johnson's Eighth Amendment rights. See Estelle v. Gamble, 429 U.S. 97, 104 (1976)

41. By all defendants acting with animosity for Johnson, which motivated all their actions, due to his status as someone with s.m.i.s, they violated his Fourteenth Amendment rights. Village of Willowbrook v. Olech, 528 U.S. 562, 565-66 (  )

## Relief Sought

42. Based on the forenoted violations of his rights, Johnson seeks:

A. Compensatory and punitive damages,
B. Declaratory and injunctive relief,
C. His costs, any attorney fees, and any other relief that is fair and just and allowed by law

## Verification

I, Curtis W. Johnson, having read this document, declare under penalty of perjury that, based on my personal knowledge (or information and belief, if so stated), what is stated herein is true, truthful and correct.

Executed this 24th day of Feb. 2019

Curtis W. Johnson #617784
G.B.C.I.
P.O. Box 19033
Green Bay, WI
~~54307~~-9033